1
2
3
4
5
6
7
8

9           **UNITED STATES DISTRICT COURT**

10     **CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

11

12  KEITH ALVAREZ,                    )    Case No. CV 14-02681 (AS)
                                      )
13              Plaintiff,            )    **MEMORANDUM OPINION AND**
                                      )
14       v.                           )    **ORDER OF REMAND**
                                      )
15  CAROLYN W. COLVIN, Acting         )
    Commissioner of Social            )
16  Security,                         )
                                      )
17              Defendant.            )
    ——————————————————————————————————)
18

19       Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY

20  ORDERED that this matter is remanded for further administrative action

21  consistent with this Opinion.

22

23                            **PROCEEDINGS**

24

25       On April 15, 2014, Plaintiff filed a Complaint seeking review of

26  the denial of his application for Supplemental Security Income. (Docket

27  Entry No. 3).  The parties consented to proceed before the undersigned

28  United States Magistrate Judge. (Docket Entry Nos. 9-10).  On September

16, 2014, Defendant filed an Answer along with the Administrative Record

("AR").   (Docket  Entry  Nos.  13-14).    The  parties  filed  a  Joint

Stipulation ("Joint Stip.") on December 18, 2014, setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 16).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed April 16, 2014 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On March 26, 2007, Plaintiff filed an application for Supplemental Security Income, alleging a disability since March 27, 1992 due to mental illness and left knee surgery. (See AR 291-93, 318).[1] On September 16, 2008, the Administrative Law Judge, Patti Hunter ("ALJ Hunter"), heard testimony from Plaintiff and vocational expert Elizabeth Cerezo-Donnelly. (See AR 92-115). On November 5, 2008, ALJ Hunter issued a decision denying Plaintiff's application. (See AR 121-27).

Plaintiff requested that the Appeals Council review ALJ Hunter's decision. (See AR 199). On February 13, 2009, the Appeals Council vacated ALJ Hunter's decision and remanded the matter in order for the Administrative Law Judge to do the following: (1) "Obtain additional evidence concerning the claimant's musculoskeletal and mental conditions in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence"; (2) "Further evaluate the claimant's subjective

---

[1] Plaintiff was incarcerated off and on from 1995 to 1999 and from 1999 to 2007, and, after his released from prison on March 26, 2007, was re-incarcerated from April 2010 to April 2011. (See AR 68, 96-97 289).

complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms"; (3) "Specify the mental residual functional capacity"; (4) "Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations"; and (5) "Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base". (See AR 129-32).

On June 7, 2011, ALJ Hunter heard testimony from Plaintiff and vocational expert David Van Winkle. (See AR 65-89). On July 15, 2011, ALJ Hunter issued a decision denying Plaintiff's application. (See AR 136-146).

Plaintiff requested that the Appeal's Council review ALJ Hunter's July 15, 2011 decision. (See AR 244-45).[2] On September 18, 2012, the Appeals Council remanded the matter back to the Administrative Law Judge. (See AR 248).[3]

On January 14, 2013, another Administrative Law Judge ("ALJ"), Dale Garwal, heard testimony from Plaintiff and vocational expert Sharon Spaventa. (See AR 46-62). On March 22, 2013, the ALJ issued a decision denying Plaintiff's application. The ALJ found that Plaintiff suffered the following severe impairments -- "degenerative joint disease of the

---

[2]    Plaintiff claimed that a remand was necessary because (a) the vocational expert had incorrectly testified about occupations, and (b) ALJ Hunter did not properly analyze the evidence concerning Plaintiff's Anti-Social Personality Disorder. (See AR 245).

[3]    The reason for the remand is unclear from the record.

knees, status post multiple surgical repairs; right shoulder rotator cuff tendonitis with partial thickness tear, status post prior surgery; prior dislocation of the left shoulder, status post surgery; antisocial personality disorder; and narcissistic personality disorder" -- but was not disabled within the meaning of the Social Security Act. (See AR 13-23),

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 7-9).  The request was denied on February 12, 2014. (See AR 1-5).  The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.  See 42 U.S.C. §§ 405(g); 1383(c).

### PLAINTIFF'S CONTENTION

Plaintiff alleges that, in assessing Plaintiff's residual functional capacity, the ALJ failed to properly consider the medical evidence contained in the opinions of his treating psychiatrist and treating physician.  (See Joint Stip. at 5-17, 23-25).

### DISCUSSION

**A.   The ALJ Erred in Assessing the Opinion of Plaintiff's Treating Psychiatrist.**

Plaintiff asserts that the ALJ did not provide a specific and legitimate reason for rejecting the opinion of Dr. Bartell, Plaintiff's treating psychiatrist.  (See Joint Stip. at 6-12, 23-25).  Defendant

asserts that the ALJ's reasons for rejecting the opinion of Plaintiff's treating psychiatrist were specific and legitimate. (See Joint Stip. at 17-21).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[4] to perform sedentary work[5] in that he can lift and carry 10 pounds occasionally and 5 pounds frequently; he can stand and walk for 2 hours total in an 8-hour workday; he can sit 6 hours total during an 8-hour workday; he cannot do more than occasional bending or stooping; he cannot do more than occasional use of the bilateral upper extremities; he cannot perform greater than simple, routine tasks; and he cannot have more than occasional contact with the public and coworkers. (See AR 19).

Gary Bartell, M.D. (POC Psychiatrist), treated Plaintiff from May 11, 2007 (while Plaintiff was on parole) to May 20, 2008 (approximately one month after Plaintiff was discharged from parole). (See AR 541-62). In an Evaluation Note dated June 6, 2007, Dr. Bartell stated that Plaintiff's "ability to work is limited by panic episodes around people and his inability to interact in group settings like grocery stores." (See AR 556).  In a Mental Residual Functional Capacity Questionnaire dated January 4, 2008, Dr. Bartell stated that Plaintiff had the following limitations: "moderate" ("There is more than a slight

---

[4]   A Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. § 404.1545(a)(1).

[5]   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and standing, with walking and standing required occasionally."  20 C.F.R. § 404.1567(a).

limitation in this area, but the individual is still able to function satisfactorily.") with respect to the abilities to remember work-like procedures, understand and remember very short and simple instructions, to carry out very short and simple instructions, maintain regular attendance and be punctual within customary but usually strict tolerances, sustain an ordinary routine without special supervision, to make simple work-related decisions, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions; "marked" ("There is a serious limitation in this area. There is a substantial loss in the ability to effectively function.") with respect to the abilities to maintain attention for a two hour segment, and to perform at a consistent pace without an unreasonable number and length of rest periods; and "extreme" ("There is a major limitation in this area. There is no useful ability to function in this area.") with respect to the abilities to work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism form supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and deal with normal work stress. Additionally, Dr. Bartlett stated that Plaintiff was not a malingerer, that Plaintiff's impairments lasted or could be expected to last at least 12 months, and he anticipated that Plaintiff's impairments would cause Plaintiff to be absent from work an average of more than four days per month. (See AR 497-500).

The ALJ addressed Dr. Bartell's opinion as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Treating psychiatrist, Dr. Bartell, also noted improvement on Lexapro, 10 mg, to the extent the claimant no longer had anxiety and panic attacks and his mood was stabilized.   Progress notes by Dr. Bartell reflect the claimant was attending college, which contributed to some anxiety.   Nonetheless, at times he was described as alert, pleasant, organized and cooperative.   With treatment, the claimant denied depression.   When he was compliant, Dr. Bartell characterized the claimant as "stable" on medication. Notwithstanding his progress on prescribed medical treatment, responses to a medical source statement by Dr. Bartell set forth moderate, marked and extreme mental limitations.   As noted in the prior decision, I find such responses by Dr. Bartell internally inconsistent with his above-noted progress notes (Exhibit 17 F and 13F); and inconsistent with the weight of the evidence.

19
20

(AR 17).

21
22
23
24
25
26
27
28

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.   <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Magallanes v. Bowen</u>, 812 F.2d 747, 751 (9th Cir. 1989).   The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.   20 C.F.R. § 416.927(b)-(d).   If the

treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating physician's opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)(as amended); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).

As set forth below, the Court finds that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Bartell's opinion about Plaintiff's limitations.

Contrary to the ALJ's finding, Dr. Bartell's opinion about Plaintiff's limitations was *not* necessarily internally inconsistent with the notations in his progress notes. <u>See Valentine v. Commissioner Social Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009)(holding that the ALJ's decision to reject the treating physician's opinion, in part, since it was inconsistent with the treating physician's own treatment notes was a a specific and legitimate reason supported by substantial evidence); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008)(holding that an incongruity between a treating physician's opinion and his or her medical records is a specific and legitimate reason for rejecting the treating physician's opinion of a claimant's limitations).

While certain notations in the Progress Notes indicate that Plaintiff's mood, symptoms, attitude and appearance appeared to be helped by the prescribed medication -- (<u>see</u> AR 551 [In a Progress Note dated May 11, 2007 (Plaintiff's first visit), Dr. Bartell stated, "He took Lexapro 10mg daily for six years in the past and did better with

8

this.  He notes it stopped his anxiety and panic attacks and 'stabilize my mood.' . . . He denies depression but notes feeling anxiety without his medication."]; AR 550 [In a Progress Note dated May 15, 2007, Dr. Bartell stated, "He has taken the Lexapro 10mg for the past week and notes he may be sleeping better.  He notes less real change in his depression and anxiety. . . He is alert, wearing dark glasses.  He is pleasant and organized."]; AR 549 [In a Progress Note dated May 29, 2007, Dr. Bartell stated, "He is taking the Lexapro 10 mg hs on a regular basis and is noting less anxiety. . . .  He is alert, cooperative and makes good eye contact."]; AR 546 [In a Progress Note dated June 8, 2007, Dr. Bartlett stated, "He continues to take Lexapro hs on a regular basis.  He overall is less depressed and anxious; we talked about considering increasing the dose of Lexapro. . . .  He is alert, pleasant and organized."]; AR 547-48 [In an Evaluation Note dated June 8, 2007, Dr. Bartell stated, "This parolee is pleasant and cooperative," "He is alert and well oriented," and "Panic episodes have been part of his depression.  Lexapro has worked better than any other drug."]; AR 545 [In a Progress Note dated July 6, 2007, Dr. Bartell stated, "Parolee is continuing to take Lexapro 10mg hs on a regular basis.  He remains less depressed and anxious" and "Stable on present dose of medication."]; AR 544 [In a Progress Note dated October 19, 2007, Dr. Bartell stated, "Parolee is still taking Lexapro 10mg hs.  He is still less depressed but may be depressed by school."]; and AR 542 [In a Progress Note dated February 8, 2008, Dr. Bartell stated, "Taking courses at Hancock College.  He is passing his courses.  He is taking Lexapro 10 mg. Hs.  He continues to feel stressed by school . . . His mood is 'up and down." He is alert, pleasant and organized" and "Stable with current medications."]), -- such notations do not reflect that

9

Plaintiff was totally stable and/or did not have a serious mental condition affecting his ability to perform work.

Indeed, there are other notations in Dr. Bartell's Progress Notes indicating the severity of Plaintiff's mental condition and its adverse affect on Plaintiff's ability to perform work. (See AR 546 [In a Progress Note dated June 8, 2007, Dr. Bartell stated that consideration was given to increasing the dose of Lexapro]; AR 548 (In an Evaluation Note dated June 8, 2007, Dr. Bartlett stated that "[h]is ability to work is limited by panic episodes around people and his inability to interact in group settings like grocery stores"); AR 542, 544, 546, 548-550 [In Progress Notes dated May 15 and 29, 2007, June 8, 2007, July 6, 2007, October 19, 2007, and February 8, 2008, Dr. Bartell gave Plaintiff Global Assessment Functioning ("GAF") scores of 49[6]]; and AR 543 [In a Medical Report dated January 11, 2008, Dr. Bartlett described Plaintiff's limitations caused by his mental condition as follows: "[a]voids social interaction, aloof, guarded, panic attacks, isolated socially."]).

Moreover, contrary to the ALJ's finding, Dr. Bartell's opinion about Plaintiff's limitations was not inconsistent with the weight of the medical evidence.

_____

[6]    A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR"), 34 (2000).

The ALJ's reliance on the opinion of Dr. Ratner, the examining physician (psychologist) to reject the opinion of Dr. Barlett (Plaintiff's treating psychiatrist), see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion may constitute substantial evidence to reject a treating physician's opinion), was improper.

In a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," dated March 29, 2010, examining physician (psychologist), Lawrence Ratner, Ph.D., found that Plaintiff had the following limitations: "none" with respect to the abilities to understand and remember simple instructions and carry out simple instructions; "mild" with respect to the abilities to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with supervisors; and "moderate" with respect to the abilities to interact appropriately with the public, interact appropriately with co-workers, and respond appropriately to usual work situations and changes in a routine work setting. (See AR 568-70).

Although Dr. Ratner's opinion appears to be consistent with the ALJ's determination that Plaintiff had the RFC to perform simple, routine tasks and to interact occasionally with the public and co-workers, the clinical findings do not support the mild or moderate limitations that Dr. Ratner found. Therefore, Dr. Ratner's opinion does not constitute substantial evidence to reject Dr. Bartell's opinion. See Orn v. Astrue, supra ("[W]hen an examining physician provides

11

'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'").

When asked to identify the factors that support his assessment of Plaintiff's limitations, Dr. Ratner wrote, "He is agitated and angry. Poor impulse control." (See AR 568-69). In his evaluation report, Dr. Ratner made several findings/statements which do not support his opinion. In the Mental Status section, Dr. Ratner stated, inter alia, that Plaintiff's mood was "irritated/angry/threatening" and that Plaintiff has "[t]raits of paranoia as sometimes feel that someone is out to get him and sometimes feels people are watching him and following him." (See AR 564). In the Discussion section, Dr. Ratner made the following statements: (1) "Intellectually, though his scores were calculated to be in the Borderline intellectual range, he did not participate in a cooperative way and omitted or brushed off whatever he felt he did not want to participate [in]."; (2) "[T]he scores do not reflect [Plaintiff's] true intelligence, learning and memory capabilities, but they do certainly reflect his adaptive skills. Based on his non-compliant behavior, it is hypothesized that he most likely functions in the low average intellectual range."; (3) "Emotionally, it was clearly evident that [Plaintiff] appears as a negative, angry, sarcastic, arrogant, smug individual who doesn't push himself to do anything he doesn't want to do."; (4) "Throughout the assessment section, he demonstrated his anger, arrogance, and disdain for order and for doing anything he perceives is not of value to him, thus also he demonstrated his narcissism."; (5) "His intellect and memory functions are adequate for job placement or training, however, until he is able to manage his impulses, particularly his explosive anger, he will most

likely be unpredictable in any interpersonal situation."; and (6) "It is strongly recommended that, if we were in the best of all worlds, he receive psychiatric evaluation for his Mood Disorder and receive medication and mental health therapy to stabilize his moods.  Though this recommendation would no doubt greatly assist him to be a socially productive member of society, due to his history and current behavior the probability of him complying with such recommendations is *slim to none*."  (See AR 565-66)(emphasis added).  In the Functional Limitations Sections, Dr. Ratner stated that: (1) Plaintiff's social skills are poor as they are "inhibited by his anger and anti-social/paranoid and narcissistic personality traits;" (2) Plaintiff's emotional deterioration "[i]s likely to occur if/when he becomes annoyed/disagrees with circumstances;" (3) ["c]oncentration, persistence and pace might be hindered by mood instability and negative personality traits;" (4) Plaintiff's appropriate responses to a change in work routines or rules "[m]ay be hindered by his perception of what he perceives is appropriate or not;" and (5) Plaintiff's prognosis was poor: "Not suitable for job placement or training due to emotional l[i]ability.  If he were to be employed, he is need of a highly structured environment, with continuous oversight."  (See AR 566).  Dr. Ratner gave Plaintiff a Global Assessment of Functioning Score of 50.  (See id.).  These findings/statements simply do not support the functional limitations found by Dr. Ratner.

The ALJ's reliance on the opinion of Dr. Paladino, the examining physician (psychiatrist), to reject Dr. Bartlett's opinion and/or Dr. Ratner's opinion was also improper.

In a report following a June 2, 2007 examination of Plaintiff, Gabrielle Paladino, M.D., a Board-certified psychiatrist, found, <u>inter alia</u>, that Plaintiff had the abilities "to appropriate relate with, interact with, and deal with others if he elects to do so," "to stay at task for two-hour increments and to process multiple-step job instructions," "to process multiple-step job instructions and to respond to simple changes in a routine work setting," "to engage in group, goal-directed activities at work, such as following safety regulations and attendance rules," "to maintain basic standards of decency and personal hygiene at work and to accept job-related feedback from work supervisors if he elected to do so," and to work "in close proximity to other people at the workplace." (<u>See</u> AR 450-56). Dr. Paladino gave Plaintiff a GAF score of 61. (<u>See</u> AR 455).[7]

The ALJ's decision summarized Dr. Paladino's report, (<u>see</u> AR 16-17), and addressed the greater weight given to Dr. Paladino's report over Dr. Ratner's opinion, as follows:

> While the consultative psychological examiner opined the claimant was significantly limited on a mental health basis in Exhibit 19 F, with a GAF score of 50, I give greater weight to the board-certified psychiatric report in Exhibit 5 F, with a GAF score of 65, not indicative of disabling psychiatric impairment. Therefore, the board-certified consultative

---

[7]    A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships.  <u>See</u> Diagnostic and Statistical Manual of Mental Disorders, <u>supra</u>, at fn. 6.

psychiatric assessment in Exhibit 5 F is given greater weight over the assessment in Exhibit 19 F, with regard to mental impairment.

(AR 20).

Although Dr. Paladino's opinion appears to be consistent with the ALJ's determination that Plaintiff had the RFC to perform simple, routine tasks and to interact occasionally with the public and co-workers, the ALJ failed to explain why Dr. Paladino's opinion carries more weight than Dr. Ratner's opinion, other than the fact that Dr. Paladino assessed a higher GAF score to Plaintiff. See Lester v. Chater, supra, 81 F.3d at 831 ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). A higher GAF score was not a specific and legitimate reason for rejecting Dr. Ratner's opinion. See Deck v. Colvin, 2014 WL 7388792, *1 (9th Cir.)(". . . [T]he [GAF] score is used for treatment purposes and not for rating a person's ability to work.").

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179

15

("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>, 211 F.3d at 1179-81.

Since the ALJ failed to properly reject the opinion of Plaintiff's treating psychiatrist, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[8]

///

///

///

---

[8]     The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (2014).  Accordingly, the Court declines to rule on Plaintiff's contention regarding the ALJ's failure to properly reject the opinion of Plaintiff's treating physician with respect to Plaintiff's physical impairment (<u>see</u> Joint Stip. at 13-17, 25).  Because this matter is being remanded for further consideration, this issue should also be considered on remand.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 28, 2015

_____/s/_____

ALKA SAGAR

UNITED STATES MAGISTRATE JUDGE